IN THE COURT OF CRIMINAL APPEALS
STATE OF ALABAMA

Case No. 02-0327

CHARLES SMITH,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

APPEAL FROM THE CIRCUIT COURT
OF MONTGOMERY COUNTY, ALABAMA
CASE NUMBER: CC-2002-920,

# BRIEF OF APPELLANT CHARLES SMITH

KELLY VICKERS
Attorney at Law
Post Office Box 230803
Montgomery, Alabama 36123
(334) 202-7750

ATTORNEY FOR APPELLANT

ORAL ARGUMENT *NOT* REQUESTED

EXHIBIT B

## TABLE OF CONTENTS

TABLE OF OTHER AUTHORITIES------------------------------------3

STATEMENT OF THE CASE-----------------------------------------4

STATEMENT OF THE FACTS----------------------------------------7

STATEMENT OF THE ISSUES--------------------------------------11

SUMMARY OF THE ARGUMENTS-------------------------------------12

ARGUMENTS----------------------------------------------------13

CONCLUSION---------------------------------------------------20

CERTIFICATE OF SERVICE---------------------------------------21

**ORAL ARGUMENT NOT REQUESTED**

However, because of the multiple issues therein, counsel for the Appellant would be glad to argue the points herein in person, if so desired by the court, to provide further clarity on the issues.

# TABLE OF OTHER AUTHORITIES

*Arrington v. State*, CR-00-0995 (Ala.Crim.App. 8-30-2002)----------14

*Jefferson v. State*, 645 So.2d 313 (Ala.Crim.App. 1994)------------14

*Brady vs. Maryland*, 373 U.S. 83 (1963)----------------------------15

Holt v. State, 650 So.2d 530, 531-32 (Ala.Cr.App. 1994)----------15

6th Amendment of the U.S. Constitution-----------------------------15

*Simpson v. State*, 465 So.2d 472 (Ala.Crim.App. 1984)--------------16

*Brown v. State*, 395 So.2d 121 (Ala.Crim.App. 1980)----------------16

*Kearley v. State*, 293 So.2d 322 (Ala.Crim.App. 1974)--------------16

*Alabama Rules of Evidence* at Rule 609)----------------------------17

*R.W. v. STATE, 808 So.2d 1228* (Ala.Crim.App. 2001)----------------17

German v. State, 429 So.2d 1138, 1140 (Ala.Crim.App. 1982)--------17

STATEMENT OF THE CASE

This appeal is from a jury trial. On the 24th of July, 2002 the Appellant was indicted for one felony count: Robbery in the first degree, furthering alleging the use of a handgun. (C 1,4,5) He was arraigned and plead not guilty in open court in the company of his appointed counsel on August 8, 2002. (C 1) The notice of discovery filed by the District Attorney's office indicated that the Defendant had been convicted of the same charge over ten years earlier (C 11).

On October 28th and 29th of 2003 the Appellant was tried before a jury with Montgomery County Judge Greenhaw presiding. (C 3) Note Judge Greenhaw has since retired and Hon. Judge Hobbs has taken her position. Prior to the trial Charles Smith asked for a continuance and for a new attorney. His request was denied. (R 6) Lakeshia Atkins, the manager of the Altanta Highway Arby's, gave testimony that she had locked up after closing when a masked man suddenly appeared. (R 39) She was forced at gunpoint to open safes and give the money to the masked robber. (R 43) She heard the robber threaten to kill another employee, Trudale, and watched as the robber put the gun to Trudale's head. (R 49) Another employee, Shontrice Roberson, also witnessed the event. (R 51) Ms. Atkins confirmed the clothes worn and the mustache which was exposed from the mask matched the mustache of Charles Smith, who was arrested after a chase. (R 58) The robber ran out the back door. (R 60) Arby's employee Shontrice Roberson also

confirmed she recognized the mustache and clothes as matching the
Charles Smith. (R 82) She also confirmed that she saw the White
Jeep that sped off after the robbery. (R 84)  She could not did
recognize the Appellant as the robber based on his appearance in
court—he had shaved his mustache. (R 90)  Trudale Jackson
testified regarding the gun being pressed to his head (R 94).
Trudale helped stuff the money in bags (R 96). He watched the
robber go out the back door and get into the white jeep.  Trudale
flagged down a police officer K-9 unit who then followed the
white jeep. (R 100)  Later Trudale spotted a hole in the ceiling
tile in the men's room where they speculated the robber hid until
after closing. (R 105) Corporal Johnson testified that he was the
K-9 unit officer that followed the white jeep after the robbery.
 (R 109) He confirmed the appearance of the person in the jeep as
well as the clothes and mustache.  (R 133) He claimed the car
chase exceeded 100 miles per hour at times. (R 142) After the car
chase Corporal Johnson said he found a bank bag labeled as Arby's
in the jeep. (R 156).  Corporal Roberts took the stand and
testified he found bank bags along the route of the car chase. (R
162) Sargeant Higgins then testified that he found the ski mask
on the route of the car chase (R 174).  Finally Detective
Butterbaugh, the case agent, took the stand (R 181).  He
inventoried the evidence in the jeep which included the cash
taken from Arby's and the items found on the car chase path (R
183).  He also took numerous photos of evidence which were

introduced (R 192). The prosecution rested after these witnesses
and the defense entered a motion for judgment of acquittal based
on the sufficiency of the evidence—and the lack thereof. (R 207)
The motion was denied.

Then Charles Smith took the stand in his own defense (R
208). Charles Smith said he sped from the police because he did
not have insurance (R 214) He further claimed that the evidence
found in his jeep was planted by the officers (R 216) His
attorney has Charles Smith reveal that he committed an armed
robbery twenty years earlier (R 217). Charles Smith admits the
clothes shown as evidence are his (R 219) and confirms he had a
mustache at the time of arrest, which he had since shaved (R
220). Charles Smith stated all the officers are lying when they
implicate him in the robbery (R 224) The Defense then rests and
no rebuttal is offered by the prosecution. The Defense once
again renewed its motion for a judgment of acquittal which was,
again, denied. (R 226)

An issue was discussed regarding a video tape that was in
one of the officer's cars. (R 228) Neither the district attorney
nor the defense attorney were aware the chase was filmed until
the trial. Counsel for the defendant made a motion to have the
tape turned over due to the possibility exculpatory evidence was
on the tape. The next morning they took testimony from Detective
Butterbaugh again who informed them the tape was not collected
and was "recycled" meaning they used it again and the evidence

was lost (R 235). The Court considered the evidence and came to the conclusion that there was intent to withhold evidence from the defense. (R 237) Each side gave closing arguments.

After deliberation the Jury found Charles Smith guilty of Robbery in the first degree as charged in the indictment. (R 268, C 23) The Court stated that it found the evidence to support the verdict and entered the judgment. (R 268) The prosecution gave notice one prior felony and intent to invoke the gun enhancement. (R 269)

On November 12st, 2002 the Appellant appeared for sentencing. (R 271, C 2) The Court gave the Appellant a sentence of twenty years in the department of corrections, which was the minimum possible sentence. After sentencing Charles Smith gave verbal notice of appeal (R 272). The Court made an unusual comment that "This one needs to be done over." (R 273) This appeal ensued.

**Rulings adverse to Appellant:**

Court denies motions for judgment of acquittal. (R 207, 226)

Court denied Charles Smith's request for continuance of the Trial and his request for a new attorney. (R 6)

Court found no evidence of wrongdoing regarding the video tape the officer filmed but recycled. (R 237)

It was bizarre that the Defendant's own attorney brought out To the jury that Appellant had a prior robbery conviction This was highly prejudicial, but not preserved error. (R 217)

There were numerous objections made during the trial, but none Were ruled on by the Court in manner adverse to the Appellant.

**STATEMENT OF THE FACTS**

On the 24th of July, 2002 the Appellant was indicted for one felony count: Robbery in the first degree, furthering alleging the use of a handgun.(C 1,4,5)
He was arraigned and plead not guilty in open court in the company of his appointed counsel on August 8, 2002. (C 1) The notice of discovery filed by the District Attorney's office indicated that the Defendant had been convicted of the same charge over ten years earlier (C 11).

On October 28th and 29th of 2003 the Appellant was tried before a jury with Montgomery County Judge Greenhaw presiding.(C 3) Note Judge Greenhaw has since retired and Hon. Judge Hobbs has taken her position. Prior to the trial Charles Smith asked for a continuance and for a new attorney. His request was denied. (R 6) Lakeshia Atkins, the manager of the Altanta Highway Arby's, gave testimony that she had locked up after closing when a masked man suddenly appeared. (R 39) She was forced at gunpoint to open safes and give the money to the masked robber. (R 43) She heard the robber threaten to kill another employee, Trudale, and watched as the robber put the gun to Trudale's head. (R 49) Another employee, Shontrice Roberson, also witnessed the event. (R 51) Ms. Atkins confirmed the clothes worn and the mustache which was exposed from the mask matched the mustache of Charles Smith, who was arrested after a chase. (R 58) The robber ran out

the back door. (R 60)  Arby's employee Shontrice Roberson also
confirmed she recognized the mustache and clothes as matching the
Charles Smith. (R 82) She also confirmed that she saw the White
Jeep that sped off after the robbery. (R 84)  She could not did
recognize the Appellant as the robber based on his appearance in
court—he had shaved his mustache. (R 90)   Trudale Jackson
testified regarding the gun being pressed to his head (R 94).
Trudale helped stuff the money in bags (R 96). He watched the
robber go out the back door and get into the white jeep.  Trudale
flagged down a police officer K-9 unit who then followed the
white jeep. (R 100)  Later Trudale spotted a hole in the ceiling
tile in the men's room where they speculated the robber hid until
after closing. (R 105) Corporal Johnson testified that he was the
K-9 unit officer that followed the white jeep after the robbery.
 (R 109) He confirmed the appearance of the person in the jeep as
well as the clothes and mustache.  (R 133) He claimed the car
chase exceeded 100 miles per hour at times. (R 142) After the car
chase Corporal Johnson said he found a bank bag labeled as Arby's
in the jeep. (R 156).  Corporal Roberts took the stand and
testified he found bank bags along the route of the car chase. (R
162) Sergeant Higgins then testified that he found the ski mask
on the route of the car chase (R 174).  Finally Detective
Butterbaugh, the case agent, took the stand (R 181).  He
inventoried the evidence in the jeep which included the cash
taken from Arby's and the items found on the car chase path (R

183). He also took numerous photos of evidence which were introduced (R 192). The prosecution rested after these witnesses and the defense entered a motion for judgment of acquittal based on the sufficiency of the evidence—and the lack thereof. (R 207) The motion was denied.

Then Charles Smith took the stand in his own defense (R 208). Charles Smith said he sped from the police because he did not have insurance (R 214) He further claimed that the evidence found in his jeep was planted by the officers (R 216) His attorney has Charles Smith reveal that he committed an armed robbery twenty years earlier (R 217). Charles Smith admits the clothes shown as evidence are his (R 219) and confirms he had a mustache at the time of arrest, which he had since shaved (R 220). Charles Smith stated all the officers are lying when they implicate him in the robbery (R 224) The Defense then rests and no rebuttal is offered by the prosecution. The Defense once again renewed its motion for a judgment of acquittal which was, again, denied. (R 226)

An issue was discussed regarding a video tape that was in one of the officer's cars. (R 228) Neither the district attorney nor the defense attorney were aware the chase was filmed until the trial. Counsel for the defendant made a motion to have the tape turned over due to the possibility exculpatory evidence was on the tape. The next morning they took testimony from Detective Butterbaugh again who informed them the tape was not collected

and was "recycled" meaning they used it again and the evidence was lost (R 235). The Court considered the evidence and came to the conclusion that there was intent to withhold evidence from the defense. (R 237) Each side gave closing arguments.

After deliberation the Jury found Charles Smith guilty of Robbery in the first degree as charged in the indictment. (R 268, C 23) The Court stated that it found the evidence to support the verdict and entered the judgment. (R 268) The prosecution gave notice one prior felony and intent to invoke the gun enhancement. (R 269)

On November 12th, 2002 the Appellant appeared for sentencing. (R 271, C 2) The Court gave the Appellant a sentence of twenty years in the department of corrections, which was the minimum possible sentence.

## STATEMENT OF THE ISSUES

1. Did the Trial Court err in denying the two verbal motions for judgment of acquittal on the sufficiency of the evidence?

2. Did the Trial Court err in denying the Appellant request for new counsel and a continuance?

3. Did the Trial Court err in ruling there was no problem in the recycling of potential evidence (the video tape)?

SUMMARY OF THE ARGUMENTS

4. The Trial Court erred in denying the verbal motions for judgment of acquittal on the sufficiency of the evidence.
5. The Trial Court erred in denying the Appellant's request for new counsel and a continuance.
6. The Trial court erred in ruling there was no problem in the recycling of the potential evidence (the video tape).

## ARGUMENT

There were violations of the Appellant's rights which indicate the need for a reversal or remand. Counsel for the Appellant has received correspondence from the Appellant regarding issues which he felt needed to be presented and each of those issues are presented herein. It is hoped that considering the issues cumulatively, the Appellate Court will grant a reversal or remand.

### ISSUE 1

**The Court erred in denying the verbal motions and the written motion for judgment of acquittal on the sufficiency of the evidence.** The main witness, the store manager, Lakesia Atkins, could not identify the defendant as the perpetrator of the crime (R 73). Shontrice Roberson could not identify the defendant as the perpetrator of the crime (R 90). The hand gun which was allegedly used is never introduced as evidence. There is no mention of the amount of money which was allegedly recovered. There was no fingerprint or shoeprint evidence introduced. And finally, it is hard to believe that the video tape which an officer filmed of the car chase (which could have exonerated or implicated the Appellant) was simply "recycled." (R 160)

The evidence was largely circumstantial:

> "Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, . . . so the mere presence of the accused in a place where the controlled substance is found is not in and of itself

evidence of possession." German v. State, 429 So.2d 1138, 1140 (Ala.Crim.App. 1982).'"

It is recognized that in an appeal on the issue of the sufficiency of the evidence, the evidence is considered in favor of the State, but where there is clearly a discernible reasonable doubt or a lack of evidence the Appellate Court can and should reverse the ruling of the jury and the Court:

> This court is well aware of the applicable standard of review concerning the sufficiency> <of> <the> <evidence. "In order to sustain a conviction based on circumstantial evidence, this Court must consider the evidence in a light most favorable to the State and determine `whether the [factfinder] might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.'" Goodloe, 783 So.2d at 935, quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
>
> ***"However, circumstantial evidence justifies a conviction only when it is inconsistent with any reasonable theory of innocence.***
>
> "`The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof that the law requires.' Ex parte Acree, 63 Ala. 234 (1879)." Cumbo, 368 So.2d at 875.
>
> *R.W. v. STATE, 808 So.2d 1228* (Ala.Crim.App. 2001) {emphasis added}

The facts of this case, considered in light of the above case law, are not sufficient to sustain a conviction of robbery. Respectfully, we ask this Court to reverse the finding of guilt of the charge of robbery.

**ISSUE 2**

**The Trial Court erred in denying the Appellant's request for new counsel and a continuance.** The Appellant personally addressed the Court and expressed that he was dissatisfied with his appointed counsel and asked for another appointed attorney and a continuance (R 6). According to the Appellant, Hon. Winston Durrant did not communicate with the Appellant until four days prior to the trial. The Appellant states that Winston Durrant did not provide copies of the discovery as requested. It is to be noted that the trial counsel never submitted any motion whatsoever—not even a motion for discovery and particularly no request for exculpatory evidence (see clerk's record). The Appellant expressed to the Court he had no confidence in the appointed counsel and did not believe such counsel had adequately prepared for the trial. (R 6) The Court denied the request for new counsel and for the continuance. It would have been completely reasonable particularly to allow the Defendant to have more time to assist his counsel in preparing the case. The Court's ruling denied the Defendant his fundamental right to a fair trial.

Further, regarding the effectiveness of the trial counsel, it is outrageous that the trial counsel had the Appellant reveal that he had a previous robbery conviction which occurred nearly twenty years earlier (R 217). This fact was extremely prejudicial to the Appellant—so much so the Court should have intervened. This information did not need to be revealed since the conviction was more than ten years old (See the *Alabama Rules of Evidence* at Rule 609).

Though it occurs rarely, it is a violation of a Defendant's right to effective counsel to have a ***too speedy trial.*** See: *Kearley v. State*, 293 So.2d 322 (Ala.Crim.App. 1974), *Brown v. State*, 395 So.2d 121 (Ala.Crim.App. 1980) and *Simpson v. State*, 465 So.2d 472 (Ala.Crim.App. 1984) The Court should have granted the continuance.

The Appellant, at the very least, is entitled to a hearing on whether the alleged ineffective assistance of counsel adversely affected the trial process—thus violating the Appellant's rights under the 6th Amendment of the U.S. Constitution. See also Holt v. State, 650 So.2d 530, 531-32 (Ala.Cr.App. 1994).

Accordingly, on this issue as well, a reversal or remand is respectfully requested and warranted.

ISSUE THREE

**The Trial court erred in ruling there was no problem in the recycling of potential exculpatory evidence (the video tape).** One of the officers who was involved in the car chase stated that his video camera filmed the entire chase sequence and the aftermath (R 160). One of the issues of circumstantial evidence presented against the Defendant was that items were allegedly thrown from the fleeing vehicle and later recovered along the route of the chase (R 162, 174). Counsel for the Appellant demanded the tape which could have contained exculpatory evidence (R 228). The Court conducted a hearing on the issue of the missing tape where it was claimed that the tape was "recycled," used again, obliterating the evidence (R 235). It is bad enough that there was no fingerprint or footprint evidence collected, but for the police to carelessly destroy the crucial video tape evidence is inexcusable. The fact that they did so opens the question of intentional suppression of exculpatory evidence. The Court considered this issue, but concluded there was no harm (R 237).

Failure of the State to produce exculpatory evidence is a violation of *Brady vs. Maryland*, 373 U.S. 83 (1963). *Jefferson v. State*, 645 So.2d 313 (Ala.Crim.App. 1994) states that "the existence of any small piece of evidence favorable to the defense may, in a particular case, create just the doubt that prevents

the jury from returning a verdict of guilty." See also *Arrington v. State*, CR-00-0995 (Ala.Crim.App. 8-30-2002) The waste of the potentially exculpatory evidence is fundamentally unjust, and, considered along with the other issues presented herein dictates a reverse or remand.

***Finally, it is to be noted that when the Appellant issued his verbal notice of appeal the Court, without explanation, stated, "This one needs to be done over." (R 273) If the Court felt that way, she should have declared a mistrial.***

**CONCLUSION**

For the foregoing reasons the Appellant prays that this Court will reverse or remand the conviction on the underlying case with instructions to the trial court which will address injustices and protect his rights.

Respectfully submitted,

Kelly Vickers
Attorney for the Appellant

**OF COUNSEL:**
The Vickers Law Firm
Kelly Vickers
Attorney at Law
Post Office Box 230803
Montgomery, Alabama 36123
(334) 834-6639

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2003 I did serve a copy of the foregoing on the following, by placing the same in the United States Mail, first class, postage prepaid and addressed as follows:

The Honorable Bill Pryor
Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

Charles Smith, AIS 129560 M-182
P.O. Box 150
Mt. Meigs, AL 36057

Kelly Vickers
Attorney for the Appellant